Good morning. May it please the Court, my name is Lynn Hamilton. I am an attorney from Mesa, Arizona, and I represent Mr. Paul Greiner. Mr. Paul Greiner was convicted after a trial of receipt of child pornography and possession of child pornography. As a result of that trial, he was sentenced to a term of incarceration of 40 months. He appealed only from the issue of suppression. In this particular matter, Mr. Greiner was an employee of the Montana Department of Corrections assigned to the Pine Hills Juvenile Facility. At that facility, Mr. Paul Greiner was assigned a particular office, as well as a computer. Part of the computer setup involved him having a password and a user ID. Montana also specifically created policies regarding the use of that computer. And these policies were reinforced and given as reminders by pop-ups on the front of every computer when one would log on. Each employee was cautioned not to use the office computer for personal purposes. In this particular matter, it was discovered through Ms. Pazzini, who was the Internet Supervisor for the Montana Department of Corrections, that, in fact, someone at Pine Hills was accessing child pornography, and an investigation ensued. In this particular matter, we believe that the seminal case that controls is the case of O'Connor v. Ortega, the 1987 decision of the United States Supreme Court. In that case, the majority was Justice O'Connor, Rehnquist, White, and Powell, joined by Justice Scalia. In that particular matter. Now, if you don't mind my interrupting, O'Connor gives us general principles. Yes. Not specifically applicable to computer and Internet access, because it hardly existed at the time. There's subsequently been some cases that have applied it. The factual situation is much more similar to this one. Assuming that we think that we should follow the Simons case, which we're obviously not bound to do. It's from another circuit. But assuming we are, is this case distinguishable from Simons? It is, in that in Simons, you'll recall the CIA employee in the Fourth Circuit was accessing naked pictures of women. And in that case, after the workplace investigation had ceased, the FBI obtained a warrant. And that is the approved method. And that is the method we would urge. But before the FBI obtained the warrant, two employees, one of them a criminal investigator, got access without a warrant into his private office. That's correct. And using that information, along with other information, the warrant was obtained. Correct. So what do we do with that unwarranted, if I can use it that way, one of whom was a law enforcement investigative officer? I think that the O'Connor v. Ortega case clearly indicates that an employer, supervisor, co-workers, even visitors have access to an office very frequently within a government context or even in the private business sector. And there's no limitation placed by O'Connor v. Ortega on a supervisor or a co-worker necessarily entering and conducting a workplace-related search. The limitation of O'Connor v. Ortega is that once that workplace investigation has ceased, then you cannot exceed that scope. I think that Justice O'Connor said, for example, in O'Connor v. Ortega, that a hospital is not in the law enforcement business. In other words, the hospital should have obtained a search warrant. Does that mean that the Simons was wrongly decided, or is it different from our case? No, no. I think that the Simons case was correctly decided. And I think that that provides a correct format for Your Honors to follow, and that is that in Simons the FBI obtained a warrant prior to the search. That is the pattern we would like to see adopted and approved in this case. Without abandoning the issue of whether the search at the inception was correct, we believe that the heart and soul of this case is whether or not the scope was exceeded. I think Judge Fletcher was making the point that in Simons there was intrusion by law enforcement before a warrant was issued. Right. And, you know, you have a problem when you have a situation where you have a governmental entity, which is the employer, and that governmental entity has a law enforcement aspect to it. You could imagine the situation might arise, say, at a police station, at a state level, or even as in Takeda where the DEA office became a focus of a search, and DEA is obviously law enforcement. You have to acknowledge that there is a sliding scale when it comes to your expectation of privacy, and perhaps you have a higher expectation of privacy when you work in the private sector. Maybe you have somewhat less of an expectation of privacy when you work for, oh, the Montana Department of Mines, and maybe you have even a lesser expectation of privacy when you are working for a law enforcement agency. However, in this particular situation, Mr. Greiner worked for a home for wayward boys. He worked at Pine Hills, and while you can stretch it and say that maybe this is law enforcement, it would be a big stretch to get there. I hope that answers your question. Can I ask you this? He knew it was a crime to use the computer for personal use, did he not? Absolutely. How could he have had a reasonable expectation of privacy in this criminal activity? It's important to underscore that Mr. Greiner has never acknowledged, and he maintains steadfast that he never used the computer to access child pornography. But I understood that it was a crime simply to use it for private purpose. It is. It is. Does he deny he didn't use it? That's correct. But anyway, that issue was not really before us. That's correct. That's correct. So we have to assume he used it for a criminal purpose. Well, we would want you to assume that because he maintains to this day that he is completely innocent and that some other person who had access to his password or his ID name, in fact, accessed that computer. But on the facts before us, I think I will assume it. Okay. He was engaged in criminal activity on a state-owned computer. And since he knew that they were monitoring it, how could he reasonably expect them to just go on doing it without coming in and taking the computer away? Even if you accept arguendo that a person in a similar situation would know that he would be monitored by people at the home office of DOC and that they would be keeping track of what he was accessing on the computer, there is a difference between the employer conducting a workplace search for a workplace-related investigation as opposed to becoming Junior G-Man and helping out the FBI without a warrant. Well, I understand you make that distinction, but I'm trying to put myself in the shoes of someone as to their expectation of privacy. Why would someone expect law enforcement to keep their hands off when he's engaged in criminal activity and is being monitored? Because in the common workplace today, even when computers are assigned to particular individuals, whether it's a governmental or a business situation, people, as a matter of common practice, do utilize their office computers for personal purposes. They send personal e-mails to friends. They may engage in an office betting pool. They may buy something online. People do utilize their computer for personal purposes. But none of that is protected from? That's correct. It's not protected from the employer. And if the employer comes in and as part of an employer workplace search says, you know, this is unacceptable, we're going to have an administrative hearing or something such as that, that's one thing. It's another thing to take that next step and say, and by the way, we're inviting in the FBI to conduct a full-blown search. The person who is the employee can reasonably say, you know, it's possible my boss may come in and see what's on my computer or see if I've been doing personal e-mails or going on chat lines. It's another thing for the employee to say, and gee, maybe they're going to call in the FBI and I'm going to be in really deep trouble. Well, that's a very curious distinction. I mean, I understand the rights of privacy, but the right of privacy that is not by any means absolute, but simply a right of privacy against criminal investigation is a very odd type of privacy. I don't believe it is, Judge. I believe in O'Connor v. Ortega, that's exactly what the U.S. Supreme Court has said. They said it has to be reasonable in its inception and reasonable in its scope, and they specifically addressed that it's not reasonable in scope to extend on that workplace investigation and then turn it into a criminal investigation. And the series of cases that I found, from Takeda, which dealt with a DEA officer, Simmons, which dealt with a CIA person, or even Angevin, the OSU professor who was accessing kiddie porn, all of these people were in situations where the court said you had to have a warrant. You had to have a warrant before you could take that next step in a criminal investigation. And that's what I would urge you today, and I think my time is now up. Why don't we hear from the other side, and we will give you a chance for rebuttal. Thank you. Good morning. My name is Lori Sook. I'm an assistant U.S. attorney from Montana. In this case, the issue boils down to this. Did Mr. Greiner have a reasonable expectation of privacy? The issues addressed in all of the cases, O'Connor, Simmons, Takeda, all of these cases, really do not boil down to the issue that this case addressed. Because in lots of those cases, there were multiple searches of the office. Some of the equipment was found to be, the employer did not have, the employee did not have a reasonable expectation of privacy, yet maybe in the office they did. And then the court went on to analyze the warrant issue. This case boils down really to just the basic fact of whether Mr. Greiner had a reasonable expectation of privacy. Why? Because there weren't those other corollary searches. This case focuses on the computer and whether Mr. Greiner had a reasonable expectation of privacy. Well, let's start with a kind of work in toward the actual facts of this case. I'm assuming, and if you disagree with me, make sure you say so. I'm assuming that if the FBI, for some reason, begins to think that someone is using his office computer to access child pornography, which is not only a violation of workplace policy, but is independently a violation of criminal law. Yes. The FBI, if it becomes suspicious of this, is not involved with the employer, it needs a warrant to get into that office. Is that right? If the person has a reasonable expectation of privacy. And let's assume that it is a locked office. The person is not a shared office. People can come in and out during the day. But when the FBI goes there, the person is not there. The office is locked. The FBI goes in. I assume that they need a warrant to do that. You're correct, Your Honor. The cases have been pretty clear that on the locked office, the cases have found that persons have reasonable expectations of privacy in that office in a search conducted of the office. And this was a locked office? It was a locked office, but there was no search conducted of the office. This was — But there was a search in the sense that the FBI had to get into the locked office in order to get at the computer. Correct? That was not done by the FBI. That was done by the employer. Well, the employer first comes in and disconnects. Right. Then leaves the office, locks the office. Yes. Then the FBI comes back, a separate occasion, unlocks the office, goes in, and seizes. Correct? The employer unlocks the office and provides the computer to the FBI, and the FBI searches the computer. No search was done of the office. I understand that. The employer was really acting at the behest of the FBI. The employer was acting at its own behest and the behest of the FBI. There was a work-related function here as well as a criminal investigation going on. The distinction here that the United States sees is that there is — there was no evidence of child pornography found in anything but the computer in this case. And that was what the FBI searched. Now, why does that help you with respect to the distinctions made in O'Connor and Ortega? Because in those cases, there are distinctions made by the courts as to which items the employee had a reasonable expectation of privacy in and which items they didn't, such as desks and file cabinets or places that are open to other employees that they wouldn't have an expectation of privacy in. In this case, it's — it really goes down to the basic question of whether this employee had a reasonable expectation of privacy in this computer and the factual circumstances surrounding the computer. That's where the evidence was discovered. You have also, though, in Simmons, the acknowledgment that these two types of investigations will meld together at times. They will be a violation of work-related policies as well as crimes. And that there is not — the court did not recognize two reasons — two expectations of privacy. Are you suggesting, then, that the FBI could have consistently with O'Connor and Ortega itself gone into the office, physically gone into the office, the locked office, and taken the hard drive? No, Your Honor. No, Your Honor. Well, if not, the reason not is because Mr. Greiner had some expectation of privacy with respect to that. In the office. And the FBI did not search the office. I understand. They searched the computer. But it seems to me that you're saying that Mr. Greiner had a sufficient expectation of privacy so that it would have been incorrect for the FBI itself to unlock the office and take the hard drive. Yes, Your Honor. There would not have been an ability for the FBI to do that. And what makes it permissible here, from the government's point of view, is that it was not the FBI, but the employer acting at the FBI's instance. Well, the employer was acting at its own instance for its own purposes as well as the FBI's purposes, and they can't be divorced. And that's where the O'Connor doctrine and the doctrines of work-related search has come into place. The employer acted appropriately here in what it did. It was this computer, this office was its property. Are you saying then that Mr. Greiner had an expectation of privacy with respect to the FBI acting on its own, that the FBI couldn't unlock the office and come in and take the hard drive, but Mr. Greiner had no expectation of privacy with respect to his employer plus the FBI? That is the distinction, sir. And that's the distinction that the United States is making. And what case, except for the factual scenario in Simon's, what language helps you to that? The Simon's case is the best case because it is very factually similar. Although there was a warrant obtained in that case, that wasn't addressed by the court as to whether that was needed or appropriate. The language in the Simon's case, and there is language about the melding between the employer's investigation and the criminal investigation, and that they cannot be separated. And that's, that is what we're relying on. In the end, the principle here is that it is the burden of Mr. Greiner to establish that he had a reasonable expectation of privacy in this computer. And that is where his argument fails. I see a certain tension between the Simon's case, certainly the Simon's case as you interpret it, and our case in, is it Takeda, Takada? Well, there isn't, Your Honor, because in Takeda, as you know, the court found that he did, that that defendant did have an expectation of privacy. And that is not what we have here. But the court found that there was an expectation of privacy in a shared and locked office, and the investigation was undertaken with the cooperation of the employer just as it is here. So I don't understand what the relevant distinction is between this case and the Takeda case. Well, as those cases point out, they go to item by item. And depending on what the item is, that is what you decide whether the individual has a reasonable expectation of privacy. In this case, it's the government's position that Mr. Greiner did not have a reasonable expectation of privacy in the computer. But we understand that, and I think that's common ground. He does have some expectation of privacy with respect to entry into his locked office. Yes. And the Takeda case is one in which there was an entry into the office with the employer involved at every step. But a search and, as I recall, a wire done and surveillance done of the office, the place where he had an expectation of privacy. But, of course, he had an expectation of privacy here in this case, too. You're saying, for example, he had an expectation of privacy against the FBI coming in unassisted or independently of the employer. The question is, as I'm trying to figure out the difference between Takeda and Simons, if there is one, well, as you argue Simons, you're saying, well, listen, that was employer involvement because the employer and the investigative officer were doing it at the same time, and while there were two purposes, they were overlapping. Yes. Therefore, he did not have a legitimate expectation of privacy against the employer engaging itself for purposes of the employment under O'Connor. Fair enough. Yes. But in Takeda, we have the same involvement, and we went the other way. Well, the problem is the distinction is in Takeda there was found to be a legitimate expectation of privacy in the item that was searched, and the evidence was found in the office. In the Simons case — Well, no. Legitimate expectation. The item that was searched was they had put up a surveillance camera because they wanted to catch the guy doing what they knew he was not supposed to be doing. And that's a search of the office. That's a surveillance of the office. And that's the item that they found had an — that the court found had an expectation of privacy. And that's the distinction here. You have to go back to the question. Did he have a reasonable expectation of privacy in the item that was searched where the evidence is found? And there — clearly, he did not in this case. I think you've told us that he had a sufficient expectation of privacy with respect to his computer so that the FBI could not have come in unassisted, opened the office and taken the hard drive. No. He did not have a sufficient expectation of privacy in the computer. That's exactly what we're not saying. The office. The computer, he had no expectation of privacy. And the cases from other circuits cited in the brief tell you why. The facts, the policies, the messages on the computer, every circuit case that has looked at this factual situation has found that an employee doesn't have a reasonable expectation of privacy in the computer and what's on the computer. The problem is one of getting access to the computer. Right. And in this case, there was nothing done wrong. The FBI got access through legitimate means. If I understand your position, the FBI could not get access to the computer by unlocking Mr. Briner's office door and itself going in. Right. Now, why is the Constitution of Protection sufficient to keep the FBI from unlocking the door but not sufficient to keep the FBI from saying, Ms. Employer, would you please unlock the door so that we can go in? In this case, the employer started the investigation, called in the FBI, legitimately was able to access that computer and turn it over to the FBI. The FBI did not invade Mr. Briner's expectation of privacy if he had one in this office. They did not search or in any way go into the office to take that computer. The employer, under the O'Connor doctrine, has an ability without a warrant, with reason, to do what it did in this case. And it turned over to the FBI. For the employer's purposes. Yes. But as Simon ---- Not for law ---- I thought Justice O'Connor told us not for law enforcement purposes. That it may not extend to law enforcement purposes is what she said. And in Simon's, though, you had a melding of both of those purposes. And the Court still found that there was no issue with respect to taking the computer. As a practical matter, I'm sorry we're taking you over, but this is a tricky case. It is an interesting case, I agree. And I hope you don't mind us taking you over. No. As a practical matter, not only in this particular case, but in this category of case, what obstacles to the needs of law enforcement would be posed if a warrant were to be required? Be candid, Your Honor. There was no obstacle in this case. Right. I think that's right. And I'm asking a little more broadly. If we're trying to figure out what the rule ought to be for this category of case, which is now quite common, a locked private office, the employer has a suspicion or maybe even direct knowledge that the computer is being used not only for things that violate the workplace policies, but something that independently violates the criminal law. That was now a very common case. It is. In this category of case, is there any real obstacle or impeding of a criminal investigation to require that there be a warrant? Probably not. There could be factual circumstances where you would have exigency or some type of issue of destruction of evidence that would then bring you into a different analysis.  Certainly. So that may be a situation that arises. And there's no doubt that the best practices in this situation would be for law enforcement to get a warrant. In fact, just about every case in this area that has been cited by the defendant in the government, that's exactly what law enforcement did. No. If they'd gotten a warrant, that would have spared you a trip to Portland. Certainly. But the question here and the question the Court has to answer is not whether the And in this case, the defendant had the burden of establishing whether he had a reasonable expectation of privacy, and he did. If there are no further questions for you, thank you very much. Thank you. And if you'd like some time for rebuttal. Thank you. I would just like to say that I think one of the nifty issues that's presented by this case is the whole concept of what is an office. You heard Ms. Sook from the U.S. Attorney's Office try to distinguish the fact that in this particular matter, well, it wasn't like a files or desk that was searched and such as that. However, we all know from a common sense standpoint that with the advent of computerization, that computers have become, in a very real sense, our desk, our files, our Rolodex, our everything. And so it's no longer a situation where we talk about just physically searching an office that has a door and walls and such as that, because our office has, in a very real way, become that computer that's assigned to us. In this particular matter, Ms. Sook noted, when Judge Pollack was questioning her, that it would be impossible to separate the employer from the FBI, that they were a melded unit. Well, clearly they are not a melded unit. One is not the cat's paw of the other, one hopes, nor are they affiliated in any way. And in fact, Justice O'Connor, in the O'Connor opinion, made it very clear. She said, for example, that the hospital administrators were not law enforcement and that they were not allowed to exceed the scope of what was their authorized ability to search for workplace misconduct. And lastly, as to your question regarding whether or not there were obstacles to law enforcement getting a warrant, I appreciate Ms. Sook being candid and saying, well, no, there really weren't any obstacles. It isn't like this computer was a bomb that was about to go off. It was secured. It could have got a warrant easily. Arguably, they even maybe had probable cause. So clearly, we think that the government is in error in this matter and that clearly the FBI should have been required to have gotten a warrant. Ms. Hamlin, may I ask you one question? In questioning government's counsel, I was trying to explore the differentiations between employer access and law enforcement access, which certainly is a feature of Justice O'Connor's opinion in Ortega, O'Connor and Ortega. But it leads me to wonder whether, this will sound as if I'm disrespectful of the Supreme Court and I'm not meaning to be, but if we didn't have Justice O'Connor's opinion in that case, or if we were to say, well, there is that opinion, but as Judge Fletcher pointed out, the whole technology has changed radically since that opinion was written. But for that opinion, would it make sense in the real world for us to be drawing a distinction between whether Mr. Greiner had an expectation of privacy with respect to law enforcement personnel, but not with respect to his employer? Oh, I think so. Does that distinction really sound as if it had constitutional validity? No, I have to disagree with you there. I can certainly imagine a situation where a business employee or a governmental employee assigned a computer, occasionally strays from official policy and uses the computer for personal e-mails or to mail order something from a catalog company or whatever. And while the employee may think to himself, well, someday it may happen that I get in trouble for ordering Mother's Day flowers from the mail order company on the e-mail, he might not necessarily be thinking to himself, this could rise to the level of a federal offense. This could be some sort of a misuse of governmental equipment and giving rise to some sort of criminal offense. I do think that employees are savvy enough in today's workplace to realize that while they may get in trouble with their employer for misuse or violating a company policy, it's quite another thing to think, well, and the FBI is going to come knocking at my door. And so I think that there really is a distinction. Thank you all. Okay, thank you. Thank you. Thank both of you for good arguments on both sides. And I thank you for coming all the way from Arizona and you for coming all the way from Montana. Remarkably interesting argument. And maybe you enjoyed the trip.
judges: Noonan, W. Fletcher, Pollak